Green, J.
delivered the opinion of the court.
It is certainly true as a general principle, that when the holder of a note or bill acquires it fairly in the usual course of trade, he has nothing to do with the original parties. But in any case in which the endorsee takes the paper under circumstances which might reasonably create suspicion that it was not good, he takes it at his peril. 3 Kent’s Com. 53. This rule is usually applied to the case of notes overdue, but the principle is of general application. 3 Kent’s Com. 53: 4 Mass. Reports, 370. These commercial regulations were first established among commercial men, with whom credit is every thing. Among such men it is not to be presumed that a note or bill would remain unpaid after it was due; consequently, if it be assigned after it is due, the assignee has reasonable ground to suspect that it is not good, and therefore he takes it at his peril. Now, as this is only a case in illustration of the rule, that circumstances which might reasonably create suspicions that a note is not good, shall deprive the assignee of the protection of the law and let in the maker to his defence, it follows that however the case may be varied, yet if circumstances which *393 might reasonably create suspicions that the note was not good, exist, the principle must be applied, and the maker let in to his defence. Thus the purchaser of a bill or note must have exercised due caution and enquiry as to whether the party from whom he received it was the real owner; and if there were circumstances which would reasonably create suspicions that he was not, the. purchaser would take it at his peril. 3 Kent’s Com. 53: 3 Barn. and Cress. 466.
Now what is this case? The defendant, Cook, comes"**' to the defendant, Sandford, and offers to sell a note on a solvent man for three hundred and thirty-three dollars thirty-three and a third cents, which has less than a year to run, for the sum of one hundred and twenty-five dollars, an inadequacy so great, as according to some of the authorities, sufficient to shock the conscience, and amount to evidence of fraud. 1 Mad. Ch. 268. To say the least, the inadequacy of price for which Cook offered the note, was such as would reasonably create a suspicion that it was not good. It will not do to avoid this conclusion, by saying that Cook was hard pressed for money. If he had known that the note was good, and that Hunt would pay it, he would have valued it much higher, and however he might be pressed for money he could have obtained for it much more than was given. In the application of our-observation and practical knowledge upon this subject, it must be seen, that were an individual to offer to trade one note on a solvent man which was overdue, for which he would demand a full consideration, and another on the same individual having less than a year to run, for which he would demand but little more than one third of its amount, all men would, from these circumstances, regard the latter as much the most suspicious note. And yet it is agreed on all hands, that as to the former, reasonable suspicions would exist that it was not good, and the assignee would take it at his peril; but as to the latter it is contended no such suspicions exist, and *394 the assignee takes it discharged of any equity against the payee. Such a decision would shock the common sense of an intelligent and practical community like ours. It would be considered as the result of the application of unintelligible, legal subtleties, having no sensible application to the transactions of men. But such is not the law. The circumstances here were such as reasonably might have created suspicions that all was not right, and whether the defendant, Sandford, actually entertained -these suspicions or not, nevertheless, as he took the note heedlessly, and without due caution, under circumstances which would have made a prudent man suspicious, the maker is entitled to his defence. 3 Kent’s Com. 53. But Sandford did entertain these suspicions, as we may fairly infer from the transaction. He says it was stipulated, that if the note were collected without suit, then '“he was to pay twenty-five dollars more. Now this proves he contemplated and expected a suit, consequently did not expect the note to be paid when due. If, when a note is assigned after due, there are suspicions that all is not right, from that circumstance only, does it not follow that if it be anticipated beforehand that the note will not be paid when due, such expectation must be founded upon suspicions that the note is not good, and that there are reasons for resisting the payment. So that, in either point of view, this is such a case as will authorize the maker to set up against the assignee any defence he could have had against the payee. It is admitted there was no consideration for the note passing from Cook to Hunt, consequently Hunt is entitled to an injunction for the whole amount. The decree will therefore be reversed and a decree entered in pursuance of this opinion.
Decree reversed.